IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY SWICK,

    Plaintiff,

v.

MULTNOMAH COUNTY and
RANDALL WALRUFF

    Defendant.

3:12-cv-00815-PK

OPINION AND ORDER

PAPAK, Judge:

    Plaintiff Cindy Swick brings this employment discrimination action against Multnomah County and Randall Walruff, the County Assessor, arising from her employment in the Division of Assessment, Recording, and Taxation. Swick alleges that Waldruff harassed her through various flirtatious, off-color, and disruptive conduct, denied her leave to attend medical appointments for her diabetic condition, and improperly demoted her from her supervisory position. Swick brings claims under the Family and Medical Leave Act (FMLA), Oregon Family Leave Act (OFLA), Title VII, Oregon discrimination statutes, 42 U.S.C. 1983, and common law

Page 1 - OPINION AND ORDER

battery. Now before the court is Swick's motion for protective order and to quash subpoenas (#22.) For the reasons below, the motion is granted in part and denied in part.

## BACKGROUND

In October 2012, as a response to defendants' discovery requests, Swick produced copies of her AT&T cell phone billing statements showing the time and date of text messages and calls. Swick redacted all entries except those for exchanges between Swick and defendant Walruff. Defendants apparently requested a more detailed statement of all Swick's calls and text messages. In turn, Swick sought such records from her cell phone carrier, but did not receive a response outlining the process for obtaining those records until the morning of December 21, 2012. That same day defendants' counsel issued a subpoena duces tecum to the Oregon registered agent for AT&T Mobility II LLC seeking phone records for Swick, including the content of her text messages.[1] Defendants also issued a number of other subpoenas duces tecum to the Oregon registered agents of various payday lenders, including Rapid Cash Payday Loans, CashCo Financial Service, Inc., Cash & Go, Check Into Cash of Oregon, Inc., and Urgent Money, as well as a subpoena to the Kansas representative of Rapid Cash Payday Loans, all seeking Swick's borrowing records from January 1, 2007 to the present.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26 (b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to

---

[1] Almost two weeks earlier, on December 10, 2012, counsel for defendants also issued a similar subpoena duces tecum to the Oregon registered agent for T-Mobile USA, Inc.

Page 2 - OPINION AND ORDER

lead to the discovery of admissible evidence." *Id.* To discover relevant materials, parties may issue subpoenas directing a nonparty to produce and permit inspection and copying of documents. Fed. R. Civ. P. 45(a)(1). If a party timely moves to quash such a subpoena, the court must quash or modify the subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

## DISCUSSION

### I. Cell Phone Records

Swick argues that because defendants do not limit their cell phone records subpoenas to communications only between Plaintiff and defendant Walruff, they are "overbroad, injurious to [Swick's] personal privacy interests, and irrelevant." (Snyder Decl., #23, ¶11.) Swick also suggests that her cell phone records contain physician-patient and attorney-client communications, both of which are privileged. Defendants counter that not only are Swick's cell phone communications with Walruff relevant, but her calls and texts to other individuals immediately after she communicated with Walruff are also relevant. Defendants explain that individuals Swick contacted right after she called or texted Walruff are potential witnesses to Swick's interactions with Walruff and her resulting emotional state.

Although standing was not addressed by either party in briefing, I find that Swick has standing to challenge the subpoenas issued to her cell phone carriers. "The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18–19 (D. Me. 2010). However, courts in the Ninth Circuit have acknowledged standing to challenge subpoenas issued to a non-party in instances when something less than a clearly

Page 3 - OPINION AND ORDER

recognized "privilege" is at issue, such as when privacy interests are implicated. *See Johnson v. U.S. Bancorp*, No. C11–02010 RAJ, 2012 WL 6726523, at *2 (W.D. Wash. Dec. 27, 2012) ("A party has standing to challenge a subpoena issued to third parties where its own interests may be implicated"); *Tubar v. Clift*, Case No. C05–1154–JCC, 2007 WL 214260, at * 3 (W.D.Wash. Jan. 25, 2007) (although there is no generic "privacy" privilege, there could be some privacy interest under federal law for phone records). Because Swick objects based on recognized privileges as well as privacy interests, she has standing to challenge the subpoenas to her cell phone carriers.

Next, I agree with defendants that, as a general matter, calls or texts occurring within a few hours of Swick's negative interactions with Walruff are relevant to the claims in this case. Swick's reactions to those events are potentially probative of the level of emotional distress Swick suffered due to those interactions, and thus to her claim for emotional distress damages. But defendants' attempt to obtain a broad swath of cell phone records beyond those isolated communications is a fishing expedition not reasonably calculated to lead to the discovery of admissible evidence. *See Rivera et al. v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). For that reason, the subpoenas must be modified to request only phone records from 2008 forward (when plaintiff alleges Walruff began harassing her), and to request only for those calls and text messages between Walruff and Swick, and those made no more than two hours after such communications.

This temporal limitation, of course, does not adequately address Swick's concerns about physician-patient privilege, attorney-client privilege, or personal privacy. Regarding the first two objections, the subpoenas must be modified so as not to request records pertaining to calls

between Swick and her (or her children's) medical providers, and between Swick and her attorney. Swick must provide the telephone numbers of these individuals to defendants to facilitate the proper narrowing of the subpoena responses. As for the third category, courts address potential privacy concerns created by subpoenas for phone records by limiting both the time scope of the records and how the records are to be used. *See Johnson*, 2012 WL 6726523, at *2 (restricting subpoena to a certain time period, ordering that the phone records only be used to identify the names associated with certain telephone numbers rather than calling those numbers, and requiring a protective order limiting disclosure of the records). I already limited the time frame of the subpoenas. And a protective order is already in place providing for designation of documents or information as confidential. (Protective Order, #14.) Any cell phone records received by defendants pursuant to their subpoenas should be so designated.

## II.    Payday Lender Records

Swick generally objects to the subpoenas of records from various payday lenders because the disclosure of her financial information is intended to harass and embarrass her. She claims that this financial data is irrelevant, as she already produced income tax records to defendants detailing the extent of her earnings. Swick also argues that records from four of the five the lenders – CheckIntoCash, Cash & Go, CashCo Financial Services, Inc., and Urgent Money – are irrelevant since she stopped using those institutions in 2005 when she declared bankruptcy following her accumulation of gambling debts. Swick contends that revelation of the details of her past gambling addiction will be prejudicial and are irrelevant to the claims at issue.

Defendants, however, note that Swick admitted using the fifth payday lender – Rapid Cash– within recent months and that Swick relapsed into addiction gambling as recently as 2010.

Page 5 - OPINION AND ORDER

Defendants contend that Swick's debt and gambling history are therefore relevant as a competing source of emotional distress in the years at issue in this suit, and as evidence of her ulterior financial motivation for filing this action.

I agree that the records sought from the various payday lenders are relevant and the subpoenas for those records are proper. Swick testified that she had used Rapid Cash when she was running short of funds between paychecks since she was laid off, in March 2011, and had used Rapid Cash within a month of her November 2012 deposition. (von Ter Stegge Decl., #36, Ex. 5) (Swick Dep. at 248); (Amended Compl., #34, at ¶43.) She also declared that since she lacked a credit card, she used loans from Rapid Cash to help out her two adult children and her grandchildren. (Swick Decl., #24, at 10.) However, Swick testified she gambled and sought treatment for problem gambling sometime in 2010, during the period when she alleged Walruff was harassing her. (von Ter Stegge Decl., #36, Ex. 5) (Swick Dep. at 237-238). And she also stated that in the past she used payday loans to finance her gambling. *Id.* at 248. Evidence that Swick used Rapid Cash – or any other payday lender– after mid- 2008 could indicate she was still engaging in addictive gambling during the period when Walruff allegedly harassed her. In turn, such evidence could show that gambling losses and addiction, rather than Walruff's conduct, accounted for Swick's alleged emotional distress. Moreover, if records show Swick used a payday lender prior to her March 2011 lay-off, those records could be used to contradict Swick's deposition testimony that she only used payday lenders in recent years to make up for income she lost from being laid off.[2] And, while Swick testified that she no longer uses any

---

[2] Even though Swick's payday loan records are generally relevant to undermine emotional distress allegations as I explain above, I reject defendants argument that Swick's use of payday lenders is also relevant as a way to show her financial motivations for filing this suit. Almost

Page 6 - OPINION AND ORDER

other payday lender except Rapid Cash, defendants are entitled to test that assertion by subpoenaing records from the other lenders she has used in the past as well.[3] Finally, Swick's concerns about the privacy of her financial transactions are addressed by the existing protective order, which explicitly treats personal financial information as confidential. (Protective Order, #14, at 2-3.)

## CONCLUSION

For the foregoing reasons, Swick's motion for protective order and to quash subpoenas (#22) is granted in part and denied in part.

Dated this 25th day of February, 2013.

_____
Honorable Paul Papak
United States Magistrate Judge

---

every action seeking damages is financially motivated. Swick's financial need is irrelevant to this case, except to the extent that defendants can establish that it also contributed to her alleged emotional distress.

[3] Swick argues that the subpoena for Rapid Cash Payday Loans in Kansas must be quashed because "Oregon does not have subpoena authority in Kansas." (Snyder Decl., #23, at ¶13.) Swick is incorrect. Rule 45 allows a subpoena for production and inspection of records to issue "from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). Defendants issued the subpoena duces tecum from this court to Rapid Cash's agent in Kansas, commanding production of documents to the Multnomah County Attorney, in Portland, Oregon, a location within the District of Oregon. (Mot. to Quash, #22, Ex. D, at 1.)

Page 7 - OPINION AND ORDER